# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

**FILED**

**December 5, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

FAIRLY HUBBARD ADELSPERGER,   )
)
    Plaintiff/Appellant,      )
)
)   Rutherford Chancery
VS.                       )   No. 95DR-1285
)
)   Appeal No.
DAVID ROBERT ADELSPERGER,   )   01A01-9705-CH-00206
)
    Defendant/Appellee.      )

APPEAL FROM THE CHANCERY COURT FOR RUTHERFORD COUNTY
AT MURFREESBORO, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, III, CHANCELLOR

For the Plaintiff/Appellant:

Jon S. Jablonski
Nashville, Tennessee

For the Defendant/Appellee:

Daryl M. South
Kidwell & South
Murfreesboro, Tennessee

## REVERSED AND REMANDED

WILLIAM C. KOCH, JR., JUDGE

# O P I N I O N

This appeal presents a custody and visitation dispute. The parties were declared divorced in the Chancery Court for Rutherford County, and the wife received sole custody of the parties' three minor children. Six months later, the wife moved to Mississippi, and the father petitioned for a change of custody. Following a bench trial, the trial court granted the father custody of the children after concluding that there had been a material change of circumstances and that placing the children in the father's custody would be in their best interests. The mother asserts on this appeal that the evidence does not support the trial court's decision. We agree and, therefore, reverse the judgment.

## I.

Fairly H. Adelsperger and David R. Adelsperger were married on April 22, 1989, in Mississippi where Ms. Adelsperger's family made its home. The parties first lived in Indiana near Mr. Adelsperger's family but later decided to move because, as Mr. Adelsperger put it, they wished to "to get away from my family." Despite Ms. Adelsperger's proposal to return to Mississippi where her family lived, the parties decided to move to Murfreesboro instead.

The parties separated in October 1995, and Ms. Adelsperger filed for divorce in the Chancery Court for Rutherford County. Mr. Adelsperger became concerned during the proceeding that Ms. Adelsperger might return to Mississippi, but Ms. Adelsperger assured him that she had no present intention to move and that his visitation with the children was important to her. In February 1996, the trial court declared the parties divorced pursuant to Tenn. Code Ann. § 36-4-129 (1996) and granted Ms. Adelsperger custody of the children. The order granted Mr. Adelsperger extremely generous visitation rights but did not require Ms. Adelsperger to obtain approval of either the trial court or her husband before moving.

The divorce was far from amicable, and the parties continued to return to court for post-trial disputes concerning how they should exchange the children during visitation, their responsibilities for providing the children clothing during visitation, and the details of mid-week and telephone visitation. They also asked the trial court to intervene in disputes involving family photographs and overnight guests in their homes. The trial court eventually found each of the parties to be in contempt, and both of them spent brief periods in jail.

Ms. Adelsperger changed jobs after the divorce when her former employer was acquired by another company. She went to work for a car dealership with the expectation that she would work normal business hours. As it turned out, she was required to work six days a week with an irregular day off during the week, and she was occasionally required to work at night. This schedule interfered with her parenting responsibilities, and Ms. Adelsperger found it difficult to find help with the children because she had no family or other close friends in the Middle Tennessee area. She asked Mr. Adelsperger for assistance with the children on several occasions, but he was never available to help her.

Several months later, she received a job offer from a trucking company near her home in Mississippi that included a higher salary and more regular working hours. When she attempted to discuss this offer with Mr. Adelsperger in late July 1996, Mr. Adelsperger refused to talk with her until he consulted his lawyer. In early August 1996, Ms. Adelsperger accepted the job and moved to Mississippi after her lawyer informed her that she was not required to first obtain the court's permission to move.

Ms. Adelsperger's decision to move to Mississippi sparked new disputes with Mr. Adelsperger. He filed a petition to change custody and insisted on maintaining his weekend visitations. Ms. Adelsperger was required to drive the children from Mississippi to Murfreesboro every other weekend because Mr. Adelsperger refused to meet Ms. Adelsperger somewhere along her route. Mr. Adelsperger made no effort to visit the children in Mississippi until October 1996 when the trial court ordered him to do so. The stress of the continuing litigation with Mr. Adelsperger and traveling to Murfreesboro every other weekend affected Ms. Adelsperger's job

performance, and her new employer terminated her after two and one-half months. She then accepted a job with her father's company.

Mr. Adelsperger filed a petition to change custody several days after Ms. Adelsperger moved to Mississippi. He implied that Ms. Adelsperger had been less than truthful when she stated during the divorce proceedings that she did not intend to return to Mississippi and alleged that she had moved to Mississippi "to limit, impede, and reduce . . . [his] extremely liberal visitation, involvement, and relationship with the minor children." He also alleged that Ms. Adelsperger had been "delivering the minor children to the child care facility in an unfit, unsanitary, and unhealthy condition." Following a hearing in November 1996, the trial court filed a detailed opinion concluding that the parties' circumstances had changed materially since January 1996 and that the children's interests would be served best by changing their custody to Mr. Adelsperger. The trial court also directed Ms. Adelsperger to begin paying $660 per month as child support. After Ms. Adelsperger moved back to Tennessee from Mississippi, the trial court entered an order staying the change of custody pending this appeal.

## II.

We first take up Ms. Adelsperger's assertion that the trial court erred by failing to grant her Tenn. R. Civ. P. 41.02(2) motion for involuntary dismissal at the close of Mr. Adelsperger's proof. We need not tarry long with this issue because Ms. Adelsperger elected to present her proof rather than to rest on her motion. Following the denial of a Tenn. R. Civ. P. 41.02(2) motion, the moving party may stand on its motion and bring an appeal or present its evidence; it cannot do both. *See Bituminous Constr., Inc. v. Rucker Enters., Inc.*, 816 F.2d 965, 967 (4th Cir. 1987); *DuPont v. Southern Nat'l Bank*, 771 F.2d 874, 881 (5th Cir. 1985).[1] By proceeding with her proof, Ms. Adelsperger waived her opportunity to take issue with the trial court's denial of her Tenn. R. Civ. P. 41.02(2) motion.

---

[1]These cases were decided when Fed. R. Civ. P. 41(b) governed motions for involuntary dismissal. The language of Fed. R. Civ. P. 41(b) was substantially similar to Tenn. R. Civ. P. 41.02. In 1991, Fed. R. Civ. P. 41(b) was replaced with Fed. R. Civ. P. 52(c) which now permits motions for judgment on partial findings at any time. *See* 5 James W. Moore, et al., *Moore's Federal Practice and Procedure* ¶ 52.14[1] (2d ed. 1996).

## III.

The pivotal issue in this case involves the evidentiary foundation for the trial court's conclusions that the parties' circumstances changed materially during the six months following their divorce and that their three children's interests would be best served by requiring them to live in Tennessee with their father rather than in Mississippi with their mother. We have determined that the evidence does not support the trial court's conclusion that Ms. Adelsperger's life has become so unstable since the divorce that she should lose custody of her children.

## A.

No decisions in divorce cases require a more delicate touch than those involving child custody and visitation. Courts must strive to devise custody arrangements that promote the development of the children's relationship with both parents and interfere as little as possible with post-divorce family decision-making. *See Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996); *Taylor v. Taylor*, 849 S.W.2d 319, 331-32 (Tenn. 1993). These decisions are not intended to reward or to punish parents, *see Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991), and, in fact, the interests of the parents are secondary to those of the children. *See Doles v. Doles*, 848 S.W.2d 656, 661 (Tenn. Ct. App. 1992); *Griffin v. Stone*, 834 S.W.2d 300, 302 (Tenn. Ct. App. 1992).

A court's efforts to fashion an arrangement that will enable divorced parents to maintain a cooperative relationship for their children's best interests are all too often frustrated by the lingering pain, hurt, and anger that parents continue to feel toward each other. When the parents have drawn the battle lines over their children, there is, as a practical matter, little that courts can do other than impose and enforce an uneasy armistice. The cost of this forced truce is most often borne by the non-custodial parent. When parents fight over the children, it is a foregone conclusion that everyone in the family loses.

Courts understand the traumatic effect that divorce has on children, *see Hall v. Honeycutt*, 489 S.W.2d 37, 41 (Tenn. Ct. App. 1972), as well as the children's need for continuity and stability in their personal relationships. *See Hill v. Robbins*, 859 S.W.2d 355, 358-59 (Tenn. Ct. App. 1993); *Contreras v. Ward*, 831 S.W.2d 288, 290 (Tenn. Ct. App. 1991). Most children find stability by bonding with the custodial parent following a divorce. *See McDaniel v. McDaniel*, 743 S.W.2d 167, 169 (Tenn. Ct. App. 1987). In recognition of the importance of stability and continuity, custody and visitation decisions, once made and implemented, are res judicata upon the facts in existence or reasonably foreseeable when the decision was made. *See Young v. Smith*, 193 Tenn. 480, 485, 246 S.W.2d 93, 95 (1952); *In re parsons*, 914 S.W.2d 889, 893 (Tenn. Ct. App. 1995).

Notwithstanding the importance of stability and continuity, intervening changes in a child's circumstances may require modifying an existing custody and visitation arrangement. Tenn. Code Ann. § 36-6-101(a)(1) (Supp. 1997) empowers the courts to change custody "as the exigencies of the case may require," and courts will change custody when the party seeking to change custody proves (1) that the child's circumstances have materially changed in a way that could not have been reasonably foreseen at the time of the original custody decision, *see Smith v. Haase*, 521 S.W.2d 49, 50 (Tenn. 1975); *McDaniel v. McDaniel*, 743 S.W.2d at 169, and (2) that the child's best interests will be served by changing the existing custody arrangement. *See Hall v. Hall*, App. No. 01A01-9310-PB-00465, 1995 WL 316255, at * 2 (Tenn. Ct. App. May 25, 1995) (No Tenn. R. App. P. 11 application filed).

Custody decisions are factually driven and require the careful consideration of numerous factors. *See Holloway v. Bradley*, 190 Tenn. 565, 571, 230 S.W.2d 1003, 1006 (1950); *Scarbrough v. Scarbrough*, 752 S.W.2d 94, 96 (Tenn. Ct. App. 1988). Since these decisions often hinge on the parties' credibility, appellate courts are reluctant to second-guess trial judges who have observed the witnesses and assessed their credibility. *See Gilliam v. Gilliam*, 776 S.W.2d 81, 84 (Tenn. Ct. App. 1988). Accordingly, we decline to disturb custody decisions unless they are based on a material error of law or the evidence preponderates against them. *See Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996); *Griffin v. Stone*, 834 S.W.2d at 301.

**B.**

The trial court's decision that the children's interests would be best served by changing their custody from Ms. Adelsperger to Mr. Adelsperger appears to rest on four factual conclusions. The trial court found that after the initial divorce decree, Ms. Adelsperger demonstrated (1) financial instability affecting her ability to care for her children, (2) emotional instability apparent from her "rapid" decision to move to Mississippi after stating six months earlier that she did not intend to move, (3) indifference toward the care of her children, especially the youngest child, and (4) hostility toward Mr. Adelsperger's visitation rights. The evidence simply does not support the trial court's conclusions that Ms. Adelsperger was unstable, indifferent, or hostile.

### MS. ADELSPERGER'S CHANGES IN EMPLOYMENT

While Ms. Adelsperger has changed jobs three times since the divorce in February 1996, the circumstances surrounding these jobs are more consistent with the circumstances facing many newly single parents than with a conclusion that Ms. Adelsperger has acted irresponsibly since the divorce. Her first job change was occasioned by the sale of her employer to another company. She found a higher paying position, but her work schedule proved to be inconsistent with her responsibilities as a single mother. When she was unsuccessful in obtaining help, even from Mr. Adelsperger, she accepted another job in Mississippi that enabled her to live closer to work, have a more manageable work schedule, and obtain assistance from her family. Her performance on this job was undermined by the continuing pressure of this litigation and Mr. Adelsperger's stubborn insistence that she honor the visitation provisions in the original divorce decree. Eventually, she accepted a job with her father.

On the surface, Ms. Adelsperger's employment history appears unstable. However, changes in employment are common in today's workplace, and thus the

possibility that Ms. Adelsperger might change jobs after the divorce is something that the parties and the court should have foreseen at the time of the divorce. While the quick succession of jobs might not have been foreseeable, the record contains no proof that Ms. Adelsperger did not have some sound basis for her employment decisions or that any of her employment changes have adversely affected her children. While her income has decreased, there is no evidence that she was not providing for the children or that she was looking to Mr. Adelsperger for additional support to offset the decrease in her income. Thus, rather than being a sign of "instability," we view Ms. Adelsperger's employment history as evidence of a newly divorced mother with three children attempting to find some equilibrium between her obligations to her employer and to her children.

## Ms. Adelsperger's Move to Mississippi

While the trial court recognized that Ms. Adelsperger's move to Mississippi was not, by itself, a change in circumstances that would warrant a change in custody,[2] it concluded that her "rapid" decision to move to Mississippi provided additional evidence of her "instability." We find nothing impulsive or precipitous about Ms. Adelsperger's decision to accept a job in Mississippi. In addition, we do not view her decision to accept this job as an indication that she had been untruthful when she told the trial court and Mr. Adelsperger in early 1996 that she was not planning to move back to Mississippi.

Ms. Adelsperger applied for a job at the truck dealership in Mississippi at the same time she applied for a job with the car dealership in Tennessee. She did not pursue the Mississippi job after she obtained the Tennessee job. However, when the work hours at the car dealership proved to be different than what she expected, she pursued the Mississippi job again at her father's insistence. The Mississippi employer gave her an extremely short period of time to decide whether she would accept the job. After trying unsuccessfully to discuss the opportunity with Mr. Adelsperger, she accepted the job because it provided a higher salary, better working hours, and an opportunity to live closer to her family.

---

[2]*See Taylor v. Taylor*, 849 S.W.2d at 332 (holding that "removal is not, in and of itself, a change of circumstances sufficient to justify modification of the custody order").

The circumstances surrounding the Mississippi job offer required Ms. Adelsperger to respond quickly. She sought the advice of her lawyer and attempted to discuss the offer with Mr. Adelsperger before accepting it. Ms. Adelsperger should not be faulted because the company offering the job demanded a quick answer. She took the steps reasonably required of a person in her situation to make sure that she was making a sound, legally permissible decision. Neither her decision nor the manner in which she made it demonstrates "instability." If anything, it demonstrates focus and the ability to take advantage of opportunities when they arise.

### MS. ADELSPERGER'S INTEREST IN THE CHILDREN'S HEALTH

The trial court also concluded that Ms. Adelsperger demonstrated indifference toward the children's health after the divorce. The conclusion was based on two incidents reported to Mr. Adelsperger by employees of the children's daycare provider. The first incident involved a single occasion when Ms. Adelsperger brought her youngest to daycare with a dirty diaper and severe diaper rash. She requested that the daycare worker change the boy's diaper and told her that she had not had enough time to do it herself. The second incident involved one occasion during the summer when Ms. Adelsperger brought all the children to daycare barefoot and asked the daycare workers to put on their shoes and socks.

Charges that a parent is deliberately indifferent to a child's hygiene merit serious attention. In this case, however, there is no credible evidence that Ms. Adelsperger has been an inattentive mother. The parties' youngest son is apparently susceptible to diaper rash. He had slept through the night before the diaper incident, and Ms. Adelsperger was reluctant to wake him. The daycare reported that the child was happy and adjusted despite his diaper rash and that the rash eventually improved under Ms. Adelsperger's care. The daycare workers who testified at the hearing stated that the boy had no signs of neglect or abuse.

Permitting small children to go barefoot during the summer is neither remarkable nor surprising. It is a common occurrence, and thus bringing the children to daycare one day without their shoes and socks is simply not an indication of parental inattentiveness. Thus, one case of diaper rash, without evidence of repeated,

untreated episodes, coupled with one incident of permitting the children to go without shoes during the summer, does not rise to the level of a material change in circumstances requiring a change in custody.

## MS. ADELSPERGER'S ATTITUDE TOWARD VISITATION

Notwithstanding Ms. Adelsperger's repeated acknowledgment of the importance of the children's relationship with Mr. Adelsperger, the trial court concluded that she displayed a "somewhat authoritarian attitude with respect to the children" and a "callous disregard for the need of the children to continue their very close relationship with their father." We find little evidence of this attitude in the record. To the contrary, we find that Ms. Adelsperger took appropriate steps to maintain the children's relationship with their father.

The record contains no evidence that Ms. Adelsperger interfered with Mr. Adelsperger's visitation before she moved to Mississippi. If anything, the record indicates that Mr. Adelsperger did not take advantage of all his visitation opportunities and was never available to help Ms. Adelsperger with the children when she asked for his assistance. After Ms. Adelsperger moved to Mississippi, she regularly drove the children all the way back to Murfreesboro for visitation after Mr. Adelsperger refused to even consider meeting her somewhere along the way. A parent intent on interfering with a former spouse's visitation would not drive for hours every other weekend from Mississippi to Tennessee to ensure that the children had a chance to be with their father.

The courts may change custody if a custodial parent moves to another state in order to interfere vindictively with the non-custodial parent's visitation or if there is specific proof that the move will cause serious harm to the child. *See Aaby v. Strange*, 924 S.W.2d at 629. We find no credible evidence that Ms. Adelsperger was acting vindictively when she moved to Mississippi or that the children have been harmed by the move. Accordingly, neither the move to Mississippi nor Ms. Adelsperger's motivation for moving provide grounds for the trial court to change custody.

## IV.

We reverse the judgment awarding custody of the children to Mr. Adelsperger and remand the case to the trial court for further necessary proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to Fairly Hubbard Adelsperger and her surety and to David Robert Adelsperger for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
BEN H. CANTRELL, JUDGE