# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## MARY ANNE GUNTER ROLLER v. STEVE RAY ROLLER

**Direct Appeal from the General Sessions Court for Wilson County**
**No. 4516     Robert P. Hamilton, Judge**

---

### No. M1999-00103-COA-R3-CV - Decided May 12, 2000

---

Mother appeals from the trial court's change of custody of minor child to Father. Mother raises as issue on appeal trial court's finding as to material change in circumstances warranting change of custody. Specifically, Mother urges that the findings of the trial court were insufficient to change custody under Tenn. Code Ann. §36-6-106. In addition, Mother argues that the evidence preponderates against the trial court's finding that the child in question was now living with the father, that she was doing better in school under the father's care, that the child preferred to live with the father, and that the child unsuccessfully blended with Mother's new husband and stepchildren. For the following reasons and under the authorities cited below, we find no such preponderance and affirm the trial court in all respects.

**Tenn. R. 3 P. Appeal as of Right; Judgment of the General Sessions Court Affirmed and Remanded.**

CAIN, J., delivered the opinion of the court, in which KOCH and COTTRELL, J.J. joined.


Clark Lee Shaw, Nashville, Tennessee, for the appellant, Mary Anne Gunter Roller.

Calvin P. Tucker, Lebanon, Tennessee and Thomas F. Bloom, Nashville, Tennessee, for the appellee, Steve Ray Roller.

### OPINION

Mother and Father were divorced on March 21, 1995. In the divorce decree Mother was granted sole custody of the parties' two minor children. The instant appeal concerns the older of these children, Daughter, who was age 10 at the time of the divorce.

Mother remarried in April of 1996. This remarriage occurred suddenly and required the

almost immediate combination of the parties' children with a new family consisting of a stepfather and two step siblings. The record shows that the blending of these families was less than successful. By November of 1997, an atmosphere of tension had surrounded the relationship between Mother and Daughter. Several instances of misbehavior at school and in the home suggested stressed relations between the two, which stemmed in part from this failed blending. At the same time Daughter seems to have been instigating conflict between Mother and Father in an effort to engineer a change of her custodial arrangement. These efforts apparently resulted in the filing of the instant petition.

On March 9, 1998, Father petitioned the General Sessions Court for Wilson County at Lebanon for a modification of the final decree vesting him with custody of Daughter and for a temporary restraining order against Mother. That petition contained the following as grounds for the change of custody:

> Father avers that since the Final Decree was entered which granted custody of the children to the Mother, that a material change of circumstances has occurred. The Mother remarried in April of 1996, and the children are now in a home with a step-father, Guy Rousch, who has two children by a previous marriage, ... . [Daughter], born March 6, 1986, has now attained the age of twelve years. She is not happy at the present home. She has conflicts with her Mother, which have caused her emotional and physical stress, and as a result, has affected her grades in school and overall well-being.

> On more than one occasion, the Mother has grabbed [Daughter] by the throat with her hand and shoved the young girl up against the wall. On another occasion, the Mother punched [Daughter] in the face with her fist, thus causing her nose to bleed, Based upon the foregoing and other facts, which will be shown to the Court at a full hearing, [Daughter] desires to live with her Father.

On the strength of these averments, the trial court granted the TRO and set an initial hearing date of April 1, 1998. The first hearing concerning the change of custody was had on August 20, 1998. On that date the trial court heard from Daughter and Father. On August 28, 1998, Mother filed her motion to dissolve the TRO, challenging the truth of Father's assertions of abuse on the record. After hearing oral argument on September 9, 1998, the trial court refused to dissolve the TRO leaving the remainder of proof to be heard on March 11, 1999. On that date the court heard proof from both parents, from two of Daughter's teachers, and from Daughter's paternal Grandmother. After hearing this testimony and further argument from counsel, the trial court entered its order on April 7, 1999. In this order the court adopted its findings made from the bench and attached them as an exhibit thereto. Upon request of counsel, the trial court clarified these findings as follows:

> Mr. Brandon: My question to you is, the substantial and material change of

circumstance, did you make more findings than [Daughter's] preference and the grades that she is making...?

The Court: I did. One other that I made was the change now in the mother remarrying and having other, you know, now a half-brother and half-sister there in the house, as well; and also the apparent inability for her and her mother to get along with each other. Those would be the areas. [sic]

From this order, Mother appeals, questioning the finding of a material change in circumstances. Mother urges that this "unsuccessful blending" is not cognizable as a material change of circumstance triggering the comparative fitness analysis required by our statutes. *See* Tenn. Code Ann. §36-6-101 (Supp. 1999). In the alternative, Mother argues that the evidence at trial preponderates against such a finding of material change in circumstance. The most persuasive portions of Mother's argument center around the finding of the trial court that the allegations of abuse proved to be at best exaggerations and at worst misstatements of fact. As a result the temporary change of custody granted on the basis of these allegations was certainly suspect. The trial court noted the apparent success of the temporary order, however ill-founded it might have been, and interpreted our statutes as requiring consideration of the continuity of that altered placement. *See* Tenn. Code Ann. §36-6-106(3) (Supp. 1999). Mother argues that these factors are not even cognizable until a material change of circumstances has been found by the trial court which "has rendered the custodial parent unfit or has exposed the child to some form of risk." *Taylor v. Taylor*, 849 S.W.2d 319, 328 (Tenn. 1993). Mother urges that the tension between her and Daughter does not create the type of risk contemplated in *Taylor*. We cannot agree. Our statutes require changes in custody as the exigencies of a case may require. *See* Tenn. Code Ann. §36-6-101(a)(1) (Supp. 1999).

Although the allegations of abuse in Father's petition appear suspect upon review of the record, the testimony from Father, Mother and Daughter shows a parental relationship gone unforeseeably awry. Both Father and Mother recognized in their testimony the breakdown of relations between Mother and Daughter. By the time Father's petition was filed in March of 1998, this maternal relationship had become a continuous cycle of distrust, dishonesty, rebellion and overall disharmony. While the maternal relationship became more tense, the paternal relationship became more and more solicitous. Father's admission to "working around" Mother's wishes concerning Daughter's associations and influences support this view. Thus the record, rather than substantiating the above claims of abuse, paints the picture of a child suffering an admittedly sudden change in family dynamic, refusing to be disciplined, and inclining toward the manipulation of a mother unsuccessfully trying to reach at least disciplinary detente, and of a father willing to play the pawn in his own child's quest to avoid parental supervision. This case thus proves our statement, "No decisions in divorce cases require a more delicate touch than those involving child custody... ." *Adelsperger v. Adelsperger,* 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997).

The record supports the trial court's finding that Mother's new family unsuccessfully blended

with the old insofar as her Daughter is concerned. Daughter's statements in the record evidence the resentment stemming from the sudden combination of the two families. The record also shows that for whatever reason, the custody arrangement in existence prior to the filing of Father's petition had deteriorated such that the welfare of the child was at risk. The parties do not dispute the existence of specific instances of "acting out" and disrespect on Daughter's part. Mother's response under the original custodial arrangement was to lock Daughter in her room for extended periods of time. Father's response was to placate the child and "work around" the Mother. These incidents are prime indicators that the custody arrangement no longer promoted the daughter's relationships with both parents. *See Adelsperger v. Adelsperger,* 970 S.W.2d at 484. When maternal discipline decays into tyrannical frustration, and paternal supervision becomes dissolute pacification, it cannot be argued that a child is *not* at risk.

The record further shows that the judge, after viewing all the evidence, hearing the testimony and assessing the credibility of all the witnesses, recognized the unforeseen changes in the circumstances which, seen individually as well as in concert, rendered Mother's sole custody no longer in Daughter's best interest. When this proof is considered in connection with Daughter's expressed preference for Father's custody, the choice while difficult seems unavoidable. It must be noted that Daughter's relationship with both parents has noticeably changed since the TRO. The fact that despite the change in custody Mother and Daughter seem to be spending more time together indicates the improved relationship and gives credence to the statutory weight accorded to a child's preference. *See* Tenn. Code Ann. §36-6-106(7) (Supp. 1999).

In a custody proceeding, the welfare of the child is the primary concern for the court. The statutory factors are intended to be guides to facilitate the inquiry. Thus a change of custody is only to be made upon the showing of a material change of circumstances affecting the child's welfare. Yet once a court has found the facts constituting the alleged change, the presumption of correctness attaches on appeal, Tenn. R. App. P. 13(d) (1998); and the appealing party must show that the evidence preponderated against the findings. *See Doles v. Doles,* 848 S.W.2d 656, 661(Tenn. Ct. App. 1992) citing *Hass v. Knighton,* 676 S.W.2d 554 (Tenn.1984). We find no such preponderance.

For whatever reason the hearing on the TRO was not conducted as scheduled on April 1, 1998 following its issuance at the behest of Father on March 9, 1998. No hearing was held until August 20, 1998 and Mother filed no action to dissolve the TRO until August 28, 1998. After oral argument on September 9, 1998, the trial court refused to dissolve the TRO and nothing further happened until March 11, 1999, one full year after the custody of Daughter had been changed by the TRO from Mother to Father. The final order of the trial court on April 7, 1999 recognized the realities of the situation. In the face of changed circumstances caused at least in part by the failure of Daughter to accept her new family status and in part by her own behavior, the trial judge chose as his best available alternative to make permanent that custody arrangement which had been in place for a year prior. Under the circumstances his judgment is not against the weight of the evidence and we choose not to disturb it.

The order of the trial court is affirmed in all respects, the cause is remanded for further

proceedings as may be necessary.  Costs on appeal are taxed against both parties equally.