# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

## CLARK MATTHEW EARLS v. SHIRLEY ANN EARLS

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-98458      Russ Heldman, Judge**

---

**No. M1999-00035-COA-R3-CV - Decided May 31, 2000**

---

JUDGE COTTRELL concurring.


This case involves a tragic and troubling fact situation, but, in my opinion, does not involve any fundamental issue of law or policy. Our task lies in applying the facts herein to established principles. The primary issue in this appeal is not whether Tennessee law recognizes true no-fault divorce. The answer to that question is clearly no, except in two situations not present in this case. Similarly, this case is not about the courts' role in preserving the sanctity of marriage. These parties do not have and do not want a marital relationship. I have joined in Judge Koch's conclusions regarding the issues raised herein, but write separately on two issues.

## I. Divorce

The issue before us is whether the evidence in this case demonstrates sufficient inappropriate marital conduct to authorize a grant of divorce. I agree with Judge Koch that Tenn. Code Ann. § 36-4-129(b) (Supp. 1999) authorizes a court to declare the parties divorced, regardless of which party may be more at fault, when there is proof that would entitle either or both parties to a divorce, i.e., proof of one of the statutory grounds for divorce.

This is the question upon which the majority and dissent diverge - whether the record includes proof of inappropriate marital conduct. As detailed in Judge Koch's opinion, the courts' view of the type of conduct which constitutes cruel and inhuman treatment in a marriage has evolved, as has society's view of marriage and the individual's role in marriage. While there appears to be some lack of unanimity in appellate decisions on the specific words to be applied in defining inappropriate marital conduct, the basic question remains whether either or both of the parties engaged in a course of conduct which (1) caused pain, anguish or distress to the other party and (2) rendered continued cohabitation "improper," "unendurable," "intolerable" or "unacceptable." *See* Tenn. Code Ann. § 36-4-101(11) (Supp. 1999); *Gardner v. Gardner*, 104 Tenn. 410, 412, 58 S.W. 342, 343 (1900); *Garvey v. Garvey,* 29 Tenn. App. 291, 299-300, 203 S.W.2d 912, 916 (1946); *White v. White*, Carrol Eq. No. 3, 1988 WL 101253 at *1 (Tenn. Ct. App. Oct. 3, 1988) (no Tenn. R. App. P. 11 application filed); *Brown v. Brown*, No. 02A01-9108-CV-00168, 1992 WL 5243 at

*3 (Tenn. Ct. App. Jan. 16, 1992) (no Tenn. R. App. P. 11 application filed). Over twenty-five years ago, this court recognized as inappropriate marital conduct the everyday treatment of a spouse "by which love, the vital principle which animates a marriage, is tortured to death; with the result that the once happy joinder becomes nothing less than a 'bridge of groans across a stream of tears.'" *Newberry v. Newberry*, 493 S.W.2d 99, 101 (Tenn. Ct. App. 1973).

Recognizing that any marital relationship is the result of a unique set of compromises and a unique combination of the individual sensitivities, expectations, and personalities of the parties involved, it is understandable that judges may differ on whether particular conduct has caused unnecessary suffering to a particular individual and rendered a particular marital relationship unsustainable. My position is simply that a judge need not substitute his or her opinion for that of the parties where, as here, both parties have determined that the other spouse's conduct has made continued cohabitation improper, unendurable, intolerable or unacceptable to themselves. The evidence herein is clear, and statements at oral argument unequivocal, that neither party has any intention, hope, or desire to live with the other or to re-establish or maintain a marital relationship. Both parties' actions and statements establish the undisputed fact that their prior conduct toward each other has caused pain and distress such that each party has determined that cohabitation is improper, unendurable, and unacceptable. Therefore, I would find that the evidence preponderates against the trial court's finding that inappropriate marital conduct was not proved.

I agree with Judge Koch that both parties engaged in conduct which contributed to the deterioration of their marriage. I disagree with Judge Cain's position that our task is to determine the precipitating cause of the decline and assign responsibility for it to one of the parties. The parties herein were faced with a devastating occurrence caused by neither party. While they attempted to cope with its effects, they were unsuccessful in maintaining an intact marital relationship. Their perceptions of the other spouse's behavior or attitude, whether those perceptions were accurate or not, resulted in conduct toward each other by which their love was "tortured to death" and their marriage became a "bridge of groans across a stream of tears." As sad as this truth is, it accomplishes nothing for the judicial system to attempt to determine who was more at fault between these two parties who have already suffered enough. The legislature has determined that we are not required to. *See* Tenn. Code Ann. § 36-4-129(b) (Supp. 1999).

## II. Custody

The practical effect of both Judge Cain's and Judge Koch's opinions is to leave primary physical custody of the parties' child with the father, where it has been since the parties separated in July of 1998. Neither of my colleagues and neither of the parties dispute the inappropriateness of the trial court's award of custody to the mother, who did not ask for custody. The trial court accepted the parties' agreement, leaving the parties to believe there was no necessity to put on proof relevant to custody. Obviously, this award must be vacated.

Judge Cain would leave in effect the current situation which resulted from agreement by the parties. The result would be no initial award of custody incident to the divorce. Judge Koch would

hold that the trial court erred in not approving the custody arrangement proposed by the parties and approved by the court at the beginning of the trial. Thus, he would award joint custody, with primary physical custody in the father.

In the interest of providing stability in placement to the child, this court has consistently cautioned against temporary custody decisions by lower courts and urged prompt resolution of custody matters. *See, e.g., Smithson v. Eatherly*, No. 01A01-9806-CV-00314, 1999 WL 548586 at *3 (Tenn. Ct. App. July 29, 1999) (no Tenn. R. App. P. 11 application filed). In furtherance of those principles, rather than leave in question the legal status of the current arrangement, I would award custody in accordance with the trial court's original ruling, which decreed the arrangement agreed to by the parties, since we have vacated the court's final ruling.

Under either the majority or dissenting opinion, some action by the mother would be necessary to re-open the issue of custody. Under Judge Cain's opinion, the mother would be allowed to raise the issue of custody by amending her pleadings, pursuant to Tenn. R. Civ. P. 15.[1] Since that would trigger an initial award, the court would use a comparative fitness analysis. Under the majority opinion, the mother would need to seek a modification of the custody award under the legal standards applicable to such proceedings.[2] Judge Cain is concerned that the majority's ruling would deprive the mother of the benefit of the bargain she made in agreeing to the stipulation. I disagree.

The requirement that a change of custody would be considered only upon the mother's filing a request for modification is consistent with the parties' stipulation. However, the goal of the stipulation, from the mother's perspective, was to eliminate the requirement that she prove that an unforeseeable change of circumstances had occurred since the award by the parties' agreement that her improved health would constitute a change of circumstances. Whether the stipulation, as drafted, would have been effective to accomplish her goal is not clear. In my opinion, however, that is an

---

[1] There is nothing in the record to indicate that the mother has any intention of requesting primary or sole custody until her physical condition has improved. In fact, her last filing stated:

> Pursuant to the parties' stipulation, custody shall be awarded jointly to the parties with primary physical care of Sage to be with Husband. However, because of Wife's physical disability, in the event she is able to rehabilitate herself to the point that she can physically take care of Sage, Wife will have the right to request the Court to review custody using a comparative fitness analysis so that Wife's improved health would be a material change in circumstances.

[2] A party seeking to modify a custody arrangement must demonstrate that the child's circumstances have materially changed, and that modification is in the best interest of the child. *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). The changes must not have been reasonably anticipated at the time of the previous custody order. *See Blair v. Badenhope*, 940 S.W.2d 575, 576 (Tenn. Ct. App. 1997)

issue we need not address at this time. The mother was represented by counsel throughout and was willing to live with the stipulation, whether it would eventually accomplish what she wanted or not, when it was entered.[3] Therefore, unlike Judge Cain, I do not think she would be deprived of the benefit of her agreement by an award of primary custody to the father. Unlike Judge Koch, I see no reason for us to rule on the stipulation or on the standard to be applied to any request for custody modification until those issues are presented in the context of a modification proceeding.

In effect, I concur with Judge Koch in the award of joint custody with primary physical custody to the father, but would leave the issue of mother's burden, if she later seeks a modification of this arrangement, for determination in that proceeding.

---

[3] Had the trial court not later changed its mind regarding custody, we would have before us the stipulation as the order of the court, and presumably no party would be challenging a disposition which reflected their agreement. The interpretation and effectiveness of the stipulation would simply not be relevant unless and until the mother sought, in a later proceeding, a modification of custody.