IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 12, 2005 Session

## MARTIN EDWARD MALONE v. LYNETTE DIANE BERGER MALONE

**Direct Appeal from the Circuit Court for Bradley County**
**No. V-00-682     Hon.  John B. Hagler, Jr., Circuit Judge**

**No. E2004-02614-COA-R3-CV  - FILED OCTOBER 10, 2005**

The Trial Court, while finding a material change in circumstances, refused to change custody of the minor child on the ground that it would not be in the best interest of the child.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

James F. Logan, Jr., Cleveland, Tennessee, for appellant.

Randy Sellers, Cleveland, Tennessee, for appellee.

### OPINION

In this action the Trial Judge refused to change custody of the minor child from the mother to the father and the father has appealed.

### Background

The father filed a Complaint for Divorce on August 4, 2000, charging irreconcilable differences, and that one child had been born of the marriage, who was then seven years old.  The mother filed a Counter-Complaint for Divorce, and the Trial Court granted the mother a divorce on the grounds of adultery and inappropriate marital conduct.  The Court designated the mother primary residential custodian of the child, with the father having co-parenting time.  The Court also entered

a Permanent Parenting Plan, which allowed the father co-parenting time every other week from Friday at 3:00 p.m. to Sunday at 3:00 p.m., plus certain holidays and two weeks in summer. The father was allowed two telephone calls per week with the child "at reasonable times and for reasonable durations", and Plan further provided that if a dispute arose, the parties would resolve the same by either counseling or mediation.

On February 27, 2003, the father filed a Petition to Modify Custody, alleging that there had been a substantial and material change of circumstances since the divorce, and that the mother had "entered into a protracted and unceasing interference with the parenting time of the Petitioner in an effort to prevent a meaningful relationship with Petitioner and his minor son." The father alleged that the mother assaulted him, his new wife and her family on July 4, 2002, before they left on vacation, and that criminal charges were pending regarding the assault. He further alleged that the mother had perpetrated a fraud on the Court by giving false testimony regarding bills father owed and other matters, and due to these changes he should be awarded custody of the child. The mother filed an Answer denying that she interfered with the father's parental rights, but that the father had interfered with her parental rights by refusing to let her say goodbye to the child before he left on an extended vacation, and by bringing the child to the justice center when he had the mother arrested for assault. Further, that the father had taken the child to see a counselor without the mother's knowledge, and that she had bills and canceled checks to show what was owed by the father, and thus denied that she had perpetrated a fraud on the Court. The mother also filed a Motion for Mediation.

The case was mediated on July 30, 2003, and the mediator reported that agreement had been reached on some issues. The mediation continued on December 3, 2003, and the mediator reported that agreements were reached on all issues concerning the parenting plan. The mother then filed a Motion to Enforce Mediation Agreement, which the Trial Court denied.

At trial, several witnesses testified, and much of the evidence was in dispute.

**Trial Court's Decision**

Following trial, the Trial Judge made findings of fact and found that both parties had been adversarial, and that this had impacted on the child. Further, that the July 4 incident was due to a "misunderstanding aggravated by the fact that the parents did not trust one another", and that the "big thing . . . was not the assault on the persons, although that's serious."

The Court found that a material change in circumstances had occurred, but that some of the changes were reasonably anticipated. The Court considered the son's problems with his mother and his emotional state as change of circumstances, which were not totally unanticipated, and that the changes had affected the child, but that his best interest would be served by intensive family counseling, and such counseling "must be undertaken with the custody structure that was agreed upon by the parents three years ago for various reasons." The Court considered the statutory factors regarding best interests, and found that both parents had love, affection, and emotional ties with the

child, but that both parents' behavior explained the child's acting out with the mother. That the mother, as primary care giver, took care of the child's needs and was very involved in his care, and that the mother had worked on the child's educational problems and sought help. The Court also found the father would not do anything better in this regard, and that the mother had encouraged the child to have friendships with other children and worked to support that, which impressed the Court. The Court found that both family units were stable and supportive, and that both parents had good mental and physical health. Regarding the home, school, and community record of the child, the Court found that the child's grades were below what they should be and that there had been "bad scenes" at mother's home, but this was due to the bad relationship between the parents more than the mother's conduct, although the mother's conduct was not always appropriate. Further, the Court found the child had been playing games with the parents, one against the other, and he could not give any weight to the preferences expressed by the child in his testimony because of the child's age and his exaggerations. For example, the Court rejected the child's testimony that the mother tried to sabotage his homework, which he characterized as "preposterous" in light of the testimony of the mother and the child's teacher. Further, that the child's discipline stories were exaggerated. As to the counseling with Dr. Biller, the Court thought this was good but was not helpful regarding the custody because the mother was not involved and was not even aware of it. The Court observed that it was not appropriate under the parties' Parenting Plan, and did not give any weight to Dr. Biller's testimony because an appropriate custodial assessment was not done.

The Court said the child's relationship with the mother was damaged, but that this could be due to a number of reasons, and stressed the relationship between the parents had caused excessive stress on the child. Regarding the psychological/emotional abuse of the child and the other parent, the Court concluded that both sides had abused each other.

Regarding the parents' past and potential for future performance of parenting responsibilities, the Court said the mother had never gotten over the father's adultery, but the father had also done things, such as not notifying the mother when his income increased and child support should have been increased, which caused hard feelings between the parties and a lack of trust, and that these difficulties did not bode well for the future unless both parents decided to alter their behavior.

Finally, the Court found that there had been manipulation on both sides and that a change of custody was not in the child's best interests because it would send a wrong message to the child, but found that the father probably should have had more standard visitation at the time of the divorce, and gave the father an additional overnight visit during the week, plus two additional weeks in the summer. The father's Petition was dismissed and the father has appealed.

**Issues Presented**

On appeal, the father insists that since the Trial Court found a material change of circumstances, that it was error not to award the primary custody of the child to the father.

The Court did find that a substantial material change of circumstances had occurred since entry of the original Order. In child custody cases, appellate review is *de novo* upon the record with a presumption of the correctness of the trial court's findings of fact. Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984).

The parties concede that a substantial and material change of circumstances has occurred, and in determining what is in the child's best interests, the Court must give proper consideration to the statutory factors enumerated in Tenn. Code Ann. §36-6-106 regarding custody decisions. Those factors are:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary care giver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; . . .

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

The Trial Court properly considered each of these factors, and the evidence does not preponderate against the Court's findings of fact with regard to these factors. Tenn. R. App. P.

13(d).

As the Court found, both parents have strong emotional ties with the child, and many of the relational problems which the mother has experienced are due to the stress between both parents, and not to some breakdown in her relationship with the child. The mother's testimony demonstrates that the mother cares for the child which is supported by other witnesses, including the child's teacher, and the mother's actions in helping the child turn in his homework, enrolling him in Sylvan, making sure he has his medications, etc.

Both parents are clearly disposed to provide for the child's needs, but the mother has been primary care giver for the child his entire life. The child has lived with the mother since the divorce, and there was no indication that the mother's home was not stable and satisfactory except the child's testimony, which the Court found to be exaggerated and unreliable.

Both parents were found to have stable family units, and both parents had good health. The Court found the child's grades had not been as good as they could have been, but this was not due to any lack of effort on the mother's part.

The Court found that both parents had abused each other, and noted that the father wished to hinge everything on the July 4 incident, but that the witnesses stories all differed regarding what actually happened, and the end result was that a misunderstanding had clearly triggered the occurrence. Finally, the Court found that the parents were equal regarding past and potential for future performance of parenting responsibilities, and that both needed to change their behavior in the future. Based upon all of the factors, the Trial Court refused change custody.

Because custody decisions are factually based and often are determined by the credibility of witnesses, appellate courts are hesitant to reverse the trial courts' decisions because the trial judge was present and able to observe the witnesses testimony and judge their credibility. *Adelsperger v. Adelsperger*, 970 S.W.2d 482 (Tenn. Ct. App. 1997). Thus, such decisions are upheld unless it is "based upon a material error of the law or the evidence preponderates against" it. *Id.* at 485.

In this case, the Trial Judge had the opportunity to observe the "manner and demeanor" of the witnesses who testified, and the "weight, faith, and credit to be given the witnesses' testimony lies in the first instance with the trier of fact", such that the credibility attached should be given great weight by this appellate court. *Whitaker v. Whitaker*, 957 S.W.2d 834 (Tenn. Ct. App. 1997). "Nowhere is the presumption of correctness of the trial court's conclusions more applicable than in matters of child custody where the surrounding testimony is complex and involved and frequently filled with disputes and acrimony." *Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. Ct. App. 1996).

The father argues that the Trial Court inappropriately focused on mother's problems in dealing with the divorce, or possibly tried to punish the father for his adultery by refusing to grant

him custody, but the record does not support this charge. The trial court did note the mother was having problems dealing with the divorce, and that the father could be more sensitive to that, but also admonished several times that both parties needed to change their behavior one toward the other. There was no indication that the Court wanted to punish the father. The Court simply pointed out bad acts by both parties as examples of how their behavior had affected the child, including the father's manipulation and less-than-honest approach to dealing with the mother, which had contributed to a lack of trust. The Court also noted that certain actions by the mother had been inappropriate, but wanted the father to understand that his attempts to vilify the mother were not accepted at face value. The Court did mention that it felt a change of custody was exactly what the child wanted and had tried to bring about by his behavior, and that the Court did not want to reward the child for such behavior, but the Court never mentioned rewarding or not rewarding either parent's behavior. The father's argument is without merit.

The Court properly considered the statutory factors mandated by the best interests analysis, made appropriate findings regarding same, and the evidence does not preponderate against these findings. Tenn. R. App. P. 13(d). The Judgment of the Trial Court is affirmed, and the cause remanded with the cost of the appeal assessed to Martin Edward Malone.

_____
HERSCHEL PICKENS FRANKS, P.J.