IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs, November 13, 2007

## PAIGE TOWNSON LYLES v. JOSHUA PAUL LYLES

**Direct Appeal from the Chancery Court for Loudon County**
**No. 10874    Hon. Frank V. Williams, III., Chancellor**

**No. E2007-01179-COA-R3-CV  - FILED JANUARY 18, 2008**

The Trial Judge awarded primary residential custody of the parties' child, d.o.b. 2/14/05, to the father.  The mother appealed the award of custody.  We affirm the Trial Court's Judgment.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

David C. Lee, Knoxville, Tennessee, for appellant.

Gary Fox, Lenoir City, Tennessee, for appellee.

**OPINION**

In this divorce action which was initiated by the father, the determinative issue on appeal is whether the Trial Court erred in awarding primary residential custody to the father, of the only child of the marriage, D.P.L., d.o.b. 2/14/05.

Following the evidentiary hearing, the Trial Court stated that the custody decision was difficult because it involved a small child, and he did think mothers often had an advantage over the fathers in their ability to better communicate with a small child, and this was not unusual.  The Court found, however, that the evidence preponderated in the father's favor, because the mother had a "skewed view" of the potential impact on her son of how she was living, and stated that "you can't keep up this lifestyle without at least at some point having a great potential for adversely influencing

your child." The Court continued, that the mother could not engage in such activities without giving the child the idea that it was okay to do so, and that even though the child was only two, he would some day become aware of what was going on, and that "what their parents passively approve by their lifestyles, oftentimes it's going to influence and be adopted by their children."

The Court stated that it was less likely the child would be exposed to potentially destructive behaviors with the father, based on the weight of the evidence, but concluded that the mother should have "liberal contact" with the child, but the father would be designated as residential custodian. The Court directed the parties to try to come up with a "working arrangement", based upon their schedules, logistics of transporting the child, etc.

The father filed a Proposed Parenting Plan, which named him as primary residential parent, and gave him 281 days with the child, and the mother 84 days. The mother filed a Proposed Parenting Plan a few days later, which names the father as primary residential parent, and gives the mother 182 days with the child, and gives the father 183 days. The Court entered the father's parenting plan, which 84 days with the mother consisted of every other weekend, and every other Wednesday evening. The Court also recited that the property issues had been resolved by agreement, and the Order granted the parties a divorce in the Decree. The Court also issued an injunction prohibiting both parents from having the child in the company of anyone who was under the influence of marijuana, alcohol, or any other type of intoxicant, and from being in a vehicle with anyone not properly licensed. The Court also ordered the mother to pay child support to the father, and directed that each party pay their own attorney's fees.

On appeal, the mother raises these issues:

1.      Whether the Trial Court abused its discretion when it awarded primary residential parent status to the father without considering the statutory factors, and without considering that the siblings had a strong bond and should not be separated?

2.      Whether the submission by the father's attorney of a proposed parenting plan that indicated that it had been approved by the mother's attorney was fraudulent, and necessitates the setting aside of that order?

3.      Whether the Trial Court abused its discretion and violated the mother's due process rights when it entered a permanent parenting order without testimony, notice, nor opportunity to be heard four days after being presented with same?

4.      Whether the Trial Court abused its discretion in entering an order allowing the mother visitation every other weekend, when the Court said in its opinion that the mother should have "liberal visitation"?

5.     Whether the Trial Court abused its discretion and violated the mother's due process rights when it entered the father's proposed permanent parenting plan, which lacked a certificate of service, four days after being presented with same?

6.     Whether this Court should award either party attorney's fees on appeal?

The mother argues the Trial Court abused its discretion when it awarded primary residential status to the father without considering the statutory factors, and without considering that the siblings had a strong bond and should not be separated.[1] Tenn. Code Ann. §36-6-106 sets forth the factors which the court is to consider in making a custody determination, which are:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;  and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to

_____

[1]The mother has an 11 year old child by a prior marriage who is residing with her.

facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

The mother argues the Court failed to consider these factors, because it did not specifically enumerate and mention them.

It is true the Trial Court did not specifically discuss these factors, but there is no indication that the Court did not consider them. The Court discussed the love, affection and emotional ties between the parents and this child, and discussed that the mother was a better communicator with the child and had an advantage in that regard. The Court stated the proof, however, preponderated in favor of the father as custodian for "all of the reasons that have been articulated on behalf of the father." Specifically, the mother was not considering the potential impact of her chosen lifestyle on the child, and that it would adversely influence him at some point. The Court further found there was less likelihood that the child would be exposed to potentially destructive behavior by the father.

As this Court has previously recognized:

Divorce affects children profoundly by undermining their sense of stability and well-being. Thus, custody and visitation arrangements are among the most important decisions confronting a trial court in a divorce case. The needs of the children are paramount; while the desires of the parents are secondary. Custody should never be used to punish or reward the parents, but rather should promote children's best interests by placing them in an environment that will best serve their physical and emotional needs.

No hard and fast rules exist for determining which custody and visitation arrangement will best serve a child's needs. The inquiry is factually driven and requires the courts to carefully weigh numerous considerations. Among these considerations are:

the age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of third-party support; the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

Courts customarily devise initial custody and visitation arrangements by engaging in

-4-

a "comparative fitness" analysis which requires them to determine which of the available custodians is comparatively more fit than the other. In undertaking this analysis, the courts must understand that parents, whether married or not, are human beings, each with his or her own virtues and vices. Therefore, the courts should not measure either parent against the standard of perfection.

Since stability is important to any child's well-being, the courts have emphasized the importance of continuity of placement in custody and visitation cases. Continuity, however, does not trump all other considerations. Depending on the facts, a parent who has been a child's primary caregiver may not necessarily be comparatively more fit than the other parent to have permanent custody of the child.

Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be able to exercise broad discretion in these matters, but they still must base their decisions on the proof and upon the appropriate application of the applicable principles of law. Thus, we review these decisions *de novo* on the record with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise.

*Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996)(citations omitted).

We have made clear that "we decline to disturb custody decisions unless they are based on a material error of law or the evidence preponderates against them." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997).

In this case, the evidence preponderates in favor of Court's decision, because both parents were shown to have a close relationship with the child, and were shown to be able to provide for the child's needs, but there were concerns about the mother's "partying" lifestyle that tipped the scale in the father's favor. There was no evidence of abuse, or that one parent tried to keep the child from the other, and both parents had a past record of performing well as parents in general. Yet, the mother had a history of staying out late, partying, drinking and smoking marijuana, which could create problems for this child if she was the primary residential parent. Many of the other statutory factors are somewhat irrelevant when dealing with a child of such young age, because there is no school record, there is no way to determine a real preference, and the continuity is not as great a factor due to the short length of time being considered. The significant factors, besides those listed above, would be the stability of the family unit of the parents, and the mental and physical health of the parents, and in this case, those factors would weigh nearly equal. The mother's bad choices regarding her friends and lifestyle were the most important factors that influenced the Court in the determination of what is in this small child's best interest, and were the matters the Court properly focused upon. The mother has not shown error in the Court's comparative fitness analysis.

The mother further argues the Trial Court did not consider the separation of the half-siblings, and that siblings should not be separated by a custody decision absent "proof of potential harm to one of them or other extenuating circumstances." *Gracey v. Gracey*, 1996 WL 198230 (Tenn. Ct. App. Apr. 25, 1996). In this case, however, there was proof of potential harm to the child, based on the mother's ongoing use of alcohol and drugs, her admitted instances of driving under the influence, and her habit of having her marijuana and paraphernalia in the house where the young child could be exposed to it. This issue is also without merit.

Next, the mother argues the Trial Court improperly "shortened" the proof in order to speed the case along, and kept her from calling her father or Trey as witnesses. The transcript, reveals that the Court asked the attorneys what additional proof they intended to present after the parties testified, and the attorneys responded they each had 3-4 witnesses who would basically testify regarding each party's parenting abilities. The Court then told them that they would each have ten minutes of direct examination time for those witnesses, to use as they saw fit. The Court did not exclude any witnesses, but merely limited the direct examination time for those witnesses. The mother then called four witnesses, and never asked for more witnesses/time, nor objected to the Court's time limits. The Court has discretion in controlling its trials/dockets, and there has been no showing of abuse of discretion. The mother did not raise any issue with the Trial Court's ruling at trial. This issue is also without merit.

The mother argues the Trial Court erred in entering the parenting plan proposed by the father, without giving her additional notice, time, or opportunity to be heard on the same. She also argues the father's attorney "fraudulently" represented that the mother's attorney had approved the father parenting plan.

The parenting plan which the father filed with the Court clearly shows that it is a "proposed" plan and it was made even more clear by the fact that the mother filed her own proposed plan four days later. While the plan filed by the father contains a paragraph that reads "Approved for Entry:" and then lists both attorneys and their addresses, this appears to be nothing more than the standard format for providing a place for the attorneys to show their approval. It was not signed by the mother's attorney, and there is no question that he had not approved the same. There is no showing that the father's attorney acted fraudulently, he simply filed a proposed parenting plan for the Court's consideration, and the Court ultimately adopted that plan, rather than adopting the proposed plan filed by the mother.

The mother continues that the Court violated her due process rights by signing the father's plan without giving her notice or opportunity to be heard. Both plans were filed shortly after the custody hearing, and the Court had already determined the custody issue. The parenting plan simply put into place what the Court had already directed, with a specific visitation schedule for the mother. As noted, the Court had, at the conclusion of the hearing, encouraged the parties to work out a reasonable visitation schedule on their own, but the parties were unable to comply with this directive, and thus each party submitted his/her own proposed plan. There was no reason for a further evidentiary hearing, as the custody issue had been fully heard and determined. This issue is

without merit.

The mother further argues that the Court erred in putting in place a "standard" visitation schedule, after stating that the mother should have "liberal contact" with the child. "Liberal contact", however, does not necessarily mean equal time, or liberal visitation. Contact could include visits, telephone calls, or other means of communicating with the child. The Court heard all the proof on the custody/visitation issue, and made a determination regarding what it felt was in the child's best interests. This issue is also without merit.

Finally, the mother argues that the parenting plan signed by the court is "ineffective" because it does not contain a certificate of service and was allegedly signed in violation of rules dealing with contested orders and the time those orders shall be filed by the clerk. She asserts these rules are "to insure that a party is aware of the existence of a final, appealable judgment". *Id.* Here, the mother was clearly aware of the existence of a final, appealable judgment, i.e. the Court's Order entered on May 14, 2007, from which the mother has appealed.

In that Order, the Court stated the parties would attempt to formulate a parenting plan, but if they were unable to do so, the Court would decide the same. This occurred, when the Court entered the father's proposed plan rather than the mother's, as was in its discretion. The parenting plan is simply an extension of the Court's custody determination. This issue is also without merit.

Both parties argue they should be granted an award of attorney's fees for this appeal. Pursuant to Tenn. Code Ann. § 36-5-103(c), an award of attorney's fees by the Court is discretionary. In the absence of egregious conduct by a party, fee awards in these cases are normally based on financial considerations. Thus, it should be noted the record shows the mother earns a gross income of $1,964.00 per month, and the father earns a gross income of $2,375.00 per month. On this record, we conclude it is not appropriate to award either party attorney's fees incurred on appeal.

The Judgment of the Trial Court is affirmed, and the cause remanded, with the cost of the appeal assessed to Paige Townson Lyles.

_____
HERSCHEL PICKENS FRANKS, P.J.

-7-