IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
FEBRUARY 18, 2003 Session

## RUSSELL GREGORY, III v. MARY FISHER GREGORY

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH 00-002153     D. J. Alissandratos, Chancellor**

_____

**No. W2002-01049-COA-R3-CV - Filed July 14, 2003**

_____

This appeal arises from a divorce and custody proceeding.  The trial court found it to be in the best interest of the child that the father be granted primary custody of the parties' minor daughter.  The primary issue on appeal is whether the trial court erred in applying the best interest analysis.  For the following reasons, we affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

William M. Monroe, Memphis, TN, for Appellant

Alicia A. Howard, Memphis, TN, for Appellee

### OPINION

### Facts and Procedural History

On November 2, 2000, Russell Gregory ("Father") filed a complaint for divorce against Mary Fisher Gregory ("Mother").  Father sought joint custody of the parties' minor daughter. Mother responded on November 20, 2000 by filing her answer and a counter-complaint for divorce seeking sole custody of the minor child and reasonable visitation to Father.

At the time the divorce was filed, both parties were employed in Memphis, Tennessee. Mother was a deputy marshal with the United States Marshal Service and Father was employed as an agent with the Federal Bureau of Investigation.  On January 7, 2001, Mother accepted a promotion with the U.S. Marshal Service that required her to relocate to Tyler, Texas.  On or about January 30, 2001 Mother relocated to Tyler, Texas. Prior to Mother's relocation and during a portion of the pendency of the divorce, the parties resided with the minor child in the marital home.

On August 17, 2001, the court appointed attorney Sabrina Ball ("Ms. Ball") as Guardian Ad Litem to act on behalf of the minor child. After an extensive investigation, Ms. Ball initially recommended that Mother be designated the primary residential parent, but that Mother's request to relocate with the minor child should be denied. In her report filed December 14, 2001, Ms. Ball found that Father was articulate and well mannered, "very cooperative and pleasant throughout the investigation," was "very active as a parent," and has a close relationship with his family. Ms. Ball further found that both parents take the child to doctor's appointments and that Father attends school activities and picks the child up from school on most days. Ms. Ball found Mother to be "equally articulate and educated and was very cooperate [sic] and pleasant to work with." Ms. Ball also consulted with numerous individuals and reported that the "consensus opinion of nearly every witness" was that both parties are deeply devoted to their child and are both excellent caretakers.

At the January 30, 2002 trial, Ms. Ball testified that the child is very affectionate with both parents and has a very close relationship with her paternal grandmother. Ms. Ball further testified that it is very healthy for the child to have such a close relationship with her parental grandparents. Ms. Ball stated that Mother had probably spent the greater amount of time with the child over the past year, but that the parties had spent substantially equal amounts of time with the child over the course of her young life. Ms. Ball further testified that she could not say which parent was the child's primary caregiver over the last year because both parents have assumed significant responsibility for the child's care. Ms. Ball testified that it was her recommendation that the child remain in Shelby County. She further stated that the primary residential care of the child should be awarded to Father if Mother chooses not move back to Shelby County.

After hearing testimony from Ms. Ball and both parties, the trial court applied a best interest of the child analysis and awarded Father primary custodial rights of the parties' minor daughter. Mother was awarded ample visitation. Mother timely filed her notice of appeal and raises the following issues for our review.

### Issues

I.      Whether the trial court erred in applying a best interest of the child analysis under Tennessee Code Annotated section 36-6-106. Whether the trial court erred in failing to apply the factors enumerated in Tennessee Code Annotated section 36-6-108(d).

II.     Whether the trial court erred in finding that it was in the minor child's best interest to be placed with Father.

III.

### Standard of Review

We review the trial court's conclusions of law "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." Kendrick v. Shoemake, No. E2000-01318-SC-R11-CV, 2002 Tenn. LEXIS 489, at *6 (Tenn. Nov. 1, 2002) (citing S. Constructors, Inc. v. Loudon County Bd. of Educ., 58 S.W.3d 706, 710 (Tenn. 2001)). With respect to the trial court's findings of fact, our review is *de novo* upon the trial court's record, accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. TENN. R.

APP. P. 13(d). When the trial court does not make specific findings of fact, we must conduct a review of the record to determine where the preponderance of the evidence lies. Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997) (citing Kemp v. Thurmond, 521 S.W.2d 806, 808 (Tenn. 1975)).

## Law and Analysis

The primary issue in this case concerns the proper standard to be applied when making an initial custody determination where one parent plans on relocating out of state with the minor child. Mother argues that the trial court erred in applying a best interest of the child analysis under Tennessee Code Annotated section 36-6-106(a). Specifically, Mother argues that these factors are inadequate in a case where one parent is relocating. While Mother recognizes that the statute and case law regarding relocation have previously dealt only with modification of custody, she argues that the court should apply the factors enumerated in Tennessee Code Annotated section 36-6-108(d) in an initial determination of custody when the parent spending the greater amount of time with the child is relocating. The only case law Mother offers in support of her position is the case of Connell v. Connell, No. 03A01-9808-CV-00282, 2000 Tenn. App. LEXIS 28 (Tenn. Ct. App. Jan. 25, 2000).

In Connell, this Court explained the "distinction between parents who spend 'substantially equal intervals of time' with their children and those who do not." Connell, 2000 Tenn. App. LEXIS, at *8. If both parents are spending substantially equal periods of time with their child, the court applies the familiar best interest analysis in deciding whether to allow a parent to relocate with the child. Id. If the time spent with the child is not substantially equal, one of three grounds must be established before a court will engage in a best interest analysis: "(1) there is no reasonable purpose for the relocation; (2) the relocation poses a threat of specific, serious harm to the child; or (3) the parent's motive for the relocation is vindictive, as that concept is defined in the statute." Id. at *8-9. If none of the grounds is established, the custodial parent is allowed to move with the child. Id. Connell, however, is clearly distinguishable from the present case. Connell was a post-divorce proceeding where an initial custody determination had previously been made and the relocating parent had previously been designated as the custodial parent. Id. at *1. In the case *sub judice*, we are dealing with an initial custody determination where the trial court has not previously engaged in a best interest analysis and neither parent previously has been adjudicated the custodial or primary residential parent.

This Court has previously recognized that a "court's determination regarding custody must be made upon the basis of the best interest of the child." Holeman v. Holeman, No. M2001-00622-COA-R3-CV, 2002 WL 31397344, at *3 (Tenn. Ct. App. Oct. 24, 2002); see also TENN. CODE ANN. § 36-6-106(a). The best interest of the child is the paramount concern in all custody determinations and the goal of any custody decision is to assure that the child is placed in an environment "that will best serve his needs." Holeman, 2002 WL 31397344, at *3; see also Rice v. Rice, 983 S.W.2d 680, 684 (Tenn. Ct. App. 1999); Ward v. Ward, No. W2000-01081-COA-R3-CV, 2001 WL 370038, at *2 (Tenn. Ct. App. April 12, 2001).

When both parents are seeking to become the primary residential parent, the court must consider what is in the child's best interest. <u>Burke v. Burke</u>, No. M2000-01111-COA-R3-CV, 2001 Tenn. App. LEXIS 599, at * 7 (Tenn. Ct. App. Aug. 7, 2001) (citing <u>Adelsperger v. Adelsperger</u>, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997)). The determination of what is in the child's best interest depends on the facts and circumstances of each case. <u>Id</u>. (citing <u>Holloway v. Bradley</u>, 230 S.W.2d 1003 (1950)). The factors the court must consider are enumerated in Tennessee Code Annotated section 36-6-106(a). <u>Id</u>. This section provides as follows:

(a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:

(1) The love, affection and emotional ties existing between the parents and child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; provided, that where there is a finding, under § 36-6-106(8), of child abuse, as defined in § 39-15-401 or § 39-15-402, or child sexual abuse, as defined in § 37-1-602, by one (1) parent, and that a non-perpetrating parent has relocated in order to flee the perpetrating parent, that such relocation shall not weigh against an award of custody;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that where there are allegations that one (1) parent has committed child abuse, [as defined in § 39-15-401 or § 39-15- 402], or child sexual abuse, [as defined in § 37-1-602], against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court

shall include in its decision a written finding of all evidence, and all findings of facts connected thereto. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

TENN. CODE ANN. § 36-6-106(a).

The decision of which parent to designate as the primary residential parent becomes increasingly difficult where, as here, both parents are fit and proper persons to care for the child. See Burke, 2001 Tenn. App. LEXIS 599, at *10. The record before this Court clearly indicates that both Mother and Father are loving and devoted parents and excellent caretakers. After reviewing the applicable factors, we have concluded that many of the factors favor both parents equally or are not in dispute.

The first factor requires the court to consider the "love, affection and emotional ties existing between the parents and child." TENN. CODE ANN. § 36-6-106(a). Ms. Ball testified that the child is very affectionate with both her Mother and Father, but that the child has a stronger bond with her Mother. Ms. Ball explained that it was her understanding that when the child becomes ill in the night or scrapes her knee, she first looks to her Mother to care for her. Based on the record before us, we find this factor favors Mother.

With respect to the second factor, both parents have the ability and the means to provide the child with "food, clothing, medical care, education and other necessary care." See TENN. CODE ANN. § 36-6-106(a). Ms. Ball testified that she could not say which parent had been the primary caregiver over the past year because both Mother and Father have "assumed significant responsibility" for the care of their child. Thus, this factor weighs in favor of both parties.

The third factor takes into consideration the "importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment." See TENN. CODE ANN. § 36-6-106(a). In this case, the child has lived in Shelby County surrounded by Father's family for her entire life. Since Mother's move to Texas, the child has lived with her Father and his parents in a clean, spacious home in Shelby County. Ms. Ball testified that the child has her own bedroom and bathroom, including a closet full of clothes and toys. Ms. Ball further testified that she interviewed one of the child's teachers who stated that there has been no noticeable change in the child's behavior or appearance since Mother has been gone. Thus, this factor favors Father.

The trial court seemed to rely heavily on factor four, which requires the court to assess the stability of the family unit of the parents. Ms. Ball testified that Father's parents moved back to the Shelby County area about the time the child was born and that they have been a tremendous part of the child's life. Ms. Ball further testified that it is very healthy for the child to have such a close, nurturing relationship with her grandparents. Ms. Ball also testified that Father has other extended family in the area that can provide a support network. Mother testified that she is also very close to her family even though they live approximately three and one half hours outside of Shelby County. Mother testified that the child has only had face-to-face contact with Mother's parents one time in 1998, not at all in 1999, once in 2000 and twice in 2001. Thus, we find this factor weighs in favor of Father.

Factor six requires the court to look at the home, school and community record of the child. See TENN. CODE ANN. § 36-6-106(a). There was ample testimony that the child is a bright, loving child that is doing very well in school. Father testified that the child has attended Little Harding Academy in Cordova since January of 1999 and that he plans to keep the child enrolled in this school. Father testified that the child is progressing satisfactorily at the school and has expressed an interest in remaining at this school.

Factors 5, 7, 8, 9 are inapplicable to the facts of the present case. As to factor 10, the trial court found that Father "testified that he will do whatever's in the best interest of the child. In terms of seeing to it that the relationship with the child with the mother is preserved as much as reasonably can be given -- visits to the mother from the child."

Ms. Ball testified that both Mother and Father would comply with court orders and would cooperate with each other in making arrangements for their child. Mother testified that she is willing to allow Father to see the child every weekend if he wanted to and that she agreed to do everything in her power to see that the Father-daughter relationship is maintained. Father testified that he would cooperate with Mother to allow her visitation and that he would do whatever is in the best interest of the child. Thus, this factor weighs in favor of both parties.

After a thorough review of the record, we find that the trial court correctly applied a best interest analysis under Tennessee Code Annotated section 36-6-106(a) in making this initial custody determination. We also find that it is in the best interest of the minor child that Father be designated as the primary residential parent.

**Conclusion**

Accordingly, we affirm the trial court's finding that it is in the best interest of the minor child that Father be designated as the primary residential parent. Costs on appeal taxed to the Appellant, Mary Fisher Gregory, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE