# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 19, 2004 Session

## EDWIN EARL SANBORN v. CARLOTTA JOAN SANBORN

**Appeal from the Circuit Court for Davidson County**
**No. 00D1616     Marietta Shipley, Judge**

---

**No. M2003-00418-COA-R3-CV - Filed May 11, 2004**

---

After twenty-five years of marriage, Father filed for divorce asserting irreconcilable differences and inappropriate marital conduct due to Mother's alleged prescription drug abuse. Father requested that he be the primary residential parent of the parties' two minor children. Mother filed an answer and counterclaim also requesting to be the primary residential parent. The trial court granted Father the divorce but designated Mother as the primary residential parent. Father appealed, asserting that the trial court erred in designating Mother as the primary residential parent and in setting the residential schedule. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Edwin Earl Sanborn.

D. Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellee, Carlotta Joan Sanborn.

## OPINION

Appellant Edwin Sanborn (Father) and Appellee Carlotta Sanborn (Mother) married in 1975 and had three (3) children, two of whom are minors.[1] After twenty-five years of marriage, Father filed for divorce asserting irreconcilable differences and inappropriate marital conduct allegedly due to prescription drug abuse by Mother. Mother filed an answer and counterclaim for divorce, admitting to irreconcilable differences but denying inappropriate marital conduct. Both parents asked to be the primary residential parent of the two minor children.

---

[1]The older of the two minors was born in July 1985 and the younger was born in March 1992.

On July 20, 2001, the parties agreed to a temporary parenting plan. It provided that the children would reside mainly with Mother in the summer in Nashville and with Father during the school year in Murfreesboro. The agreed temporary parenting plan was entered just prior to Father accepting employment in and moving to Murfreesboro, Tennessee.

In April 2002, Mother filed a motion to restructure the temporary parenting plan due to the fact that Father was employed in Nashville.[2] Father objected and argued that the current temporary parenting plan, which placed the children primarily in his care, was necessitated by Mother's prescription drug abuse. On June 11, 2002, the court amended the agreed temporary parenting plan directing that the children would remain in Father's primary residential care, and that Mother would alternate having the children from Thursday mornings until Saturday evenings one week and from Thursday mornings through Monday evenings the next.

On August 26, 2002, Mother filed a proposed parenting plan, requesting that the children reside primarily with her as well as the exclusive authority to make decisions regarding their education, non-emergency health care and religious upbringing. On September 17, 2002, the court referred the matter to mediation. The parties successfully negotiated an agreement; however, the agreement was never approved by the court. Therefore, the case was set for trial.

After three days of trial, the court granted Father a divorce based on Mother's inappropriate marital conduct, prescription drug abuse, designated Mother as the primary residential parent, and set a residential schedule that assigned primary responsibility of the children to Mother during the school year. Father was allowed the following times with the children: from Friday after school or 5:00 p.m. to Monday morning at school on the first and third weekend of each month, from Friday after school or 5:00 p.m. to Saturday at 7:00 p.m. on the second weekend of each month, and one night per week after school or 5:00 p.m. until 8:00 p.m. In the summer, the parties were to adhere to the same schedule except that each parent could choose two consecutive non-interference weeks with the children.

Father appealed challenging the designation of Mother as the primary residential parent and the residential schedule.[3] He contends that the trial court erroneously found that Mother had sufficiently rehabilitated to be the primary residential parent. He also complains that the trial judge placed too much emphasis on its concern that Father created transportation problems by living in Murfreesboro instead of Nashville. He asserts that his decision to stay in Murfreesboro was based on its superior school system and the fact that his best friend, who lives there, provides support for

---

[2] By February 2002, Father was employed in Nashville though still living in Murfreesboro.

[3] Father's issue reads, "Whether the trial court erred in designating Mother as the primary custodial parent of the parties' two children and in setting their residential schedule." However, Father's brief and citations to the record deal almost exclusively with the issue of the primary residential parent. Father only makes reference to the residential schedule in passing and does not set forth separate contentions with respect to the residential schedule with citations to the authorities and appropriate references to the record, as required by Tenn. R. App. P. 27(a)(7).

the children.  Further, he asserts that the court's emphasis on transportation is not an appropriate consideration.

Our review is *de novo* on the record with a presumption that the trial court's findings are correct, unless the evidence preponderates against those findings.  Tenn. R. App. P. 13(d); *Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). The paramount concern in such cases is the welfare and best interest of the child.  *Rice v. Rice*, 983 S.W.2d 680, 684 (Tenn. Ct. App. 1998); *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). While there are no hard and fast rules for determining what sort of custody and visitation schedule will best serve a child's needs,  *Taylor v. Taylor*, 849 S.W.2d 319, 327 (Tenn. 1993), determinations regarding child custody and visitation often hinge on subtle factors, including the credibility and demeanor of the parties involved.  *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997).  Therefore, we decline to disturb the trial court's decision unless it is based on a material error of law or the evidence preponderates against it.  *Id.*

A final decree in a divorce action that involves minor children must include a permanent parenting plan.  Tenn. Code Ann. § 36-6-404.  A permanent parenting plan is a written plan for the parenting and best interests of the child, including the allocation of parenting responsibilities and the establishment of a residential schedule.  Tenn. Code Ann. § 36-6-402(3).  Designing a residential schedule includes designating the primary residential parent, who is the parent with whom the child resides more than fifty percent of the time. Tenn. Code Ann. § 36-6-402(4).  When designating the primary residential parent and designing a residential schedule the trial court is required to consider numerous statutory factors including, without limitation, the parent's ability to instruct, inspire, and encourage the child; the relative strength, nature, and stability of the child's relationship with each parent; the degree to which a parent has been the primary caregiver; the love, affection, and emotional ties existing between each parent and the child; the emotional needs and developmental level of the child; each parent's employment schedule; and any other factors deemed relevant by the court.  Tenn. Code Ann. § 36-6-404(b).

The above factors echo those set out in Tenn. Code Ann. § 36-6-106, the statute which previously guided the courts in custody determinations.  Though the statutory criteria have been modified and re-codified, the most important criterion in determinations of a child's residential placement remains the best interests of the child.  Moreover, consideration of the factors under Tenn. Code Ann. § 36-6-404(b) continues to require a comparative analysis.  *Niceley v. Niceley*, No. M2001-02182-COA-R3-CV, 2003 WL 1130010, at *6 (Tenn. Ct. App. March 14, 2003).

Following an extensive hearing over three days, the trial court made the following findings pertinent to the issues:

Parental Responsibility:

The primary issue in this case revolves around the responsibility of the children, as they have spent all their assets with a few exceptions on paying off debt,

incurred after the 2000 firing and attorneys fees. It is clear that both parents have cared for these two children throughout all the years of marriage and truly love these children. During the marriage they equally cared for the children in various ways. From 1996 on until the separation, Mr. Sanborn took over greater responsibility for the children as he no longer worked outside the home. After the separation, following Ms. Sanborn's firing from Vanderbilt, the parties more or less split that responsibility, with Mr. Sanborn having at least one more day per week than did Ms. Sanborn. The parties entered two Parenting Plans, one for school and one for summer. The parties almost agreed on this issue prior to this trial, until Ms. Sanborn balked. The court only mentions this fact, as both parties seemed to want another plan, as they were dissatisfied with the present plan, as they both presented Proposed Plans that kept the responsibility with one or the other parent, rather than so much movement between the parents.

As far as objective evidence, both children are doing as well as can be expected. The program for Nicole in Murfreesboro seems to be a really good program. The program at Overton is presently unknown. Christie gets A's and B's at her present school. She has always done well in school. Christie is zoned for Rosepark in Nashville. Ms. Sanborn agrees she has gotten them to school late or picked Christie up early, as Nicole gets out an hour early and gets impatient.

Both parents limp along with Nicky. Ms. Sanborn believes that she is better able to handle emergencies, since she is a nurse. Both parents take care of Nicky's needs well.

Mr. Sanborn seems to have a less than perfect relationship with Christie. When asked how he gets along with Christie, he, after hesitating for a long time, said she was "attentive, respectful, a very good role model for Nicky and a help for Nicky". He appreciated her inquisitiveness, acknowledged she was bright and did very well with her sister. He did not espouse the normal things about their relationship such as love, affection, a real bond, etc.
. . . . .

Ms. Sanborn had testified that her husband makes the household too rule-bound, and has created a violent atmosphere. She believes that she and Christie have a real bond, which is particularly important as Christie enters her teen years, next year. She feels truly apologetic for the harm she has created to her husband and her children. She explained that she was reluctantly agreeable with the Temporary Parenting Plan, but since she has done well with her program, she believes that she would be a better mother to the children. Mr. Sanborn who has been so hurt by the drug abuse problem clearly does not trust Ms. Sanborn. In fact, he wanted her to go to rehab, although he had no real concrete evidence that she had abused any prescription drugs in the past year.

-4-

The court finds that Ms. Sanborn has paid a terrible price for her drug abuse. She lost her job, lost the confidence of her children, lost her family, essentially lost her house and now is on disability. The evidence against her rehabilitation is that she may have tried to pass off a forged prescription as late as December 2001. There was no proof presented that she had failed drug tests from her program with the nursing board. She attends regular NA meetings.

Mr. Sanborn, to his credit, has carried a terrific load for this family by taking the primary task of raising the children during the past two years. He has done a good job.

Nonetheless, the court finds that the transportation issue is a foolish issue in this case. Mr. Sanborn lives in Rutherford County in a rental apartment. He works in Nashville. It makes for unnecessary transportation issues. The only other issue keeping anyone in Murfreesboro is the good program for Nicole. There was no showing that the Nashville program is inferior.

The court finds that the children should live with their mother during the school week. The father should be with the children every week from Friday after school until Monday morning, except for one weekend. The father will also be with the children from after school or from the mother's house one night per week until 8 p.m. every week. They will share decision-making.

Memorandum Opinion, January 16, 2003.

The trial court also interviewed the youngest daughter, who was ten when the matter went to trial.[4] The court's findings as to the child's testimony can be summarized as follows: the child preferred to live primarily with her mother for she felt more comfortable at her mother's house, she wanted to stay with her sister, who she considered to be her buddy and not a burden, and she had no fear her mother would relapse.[5]

The trial court made specific findings concerning the issues on appeal; therefore, our review is *de novo* with a presumption that the trial court's findings are correct, unless the evidence preponderates against those findings. Tenn. R. App. P. 13(d).

---

[4] The trial judge was not obligated to interview the child for she was not twelve years of age, yet the court stated that "it seemed important to get her input."

[5] We omitted the trial judge's specific findings concerning the child's testimony from the findings quoted above. Though it is occasionally necessary to quote a minor's testimony verbatim and/or the trial court's specific findings concerning a child's testimony, it is preferable to minimize references to a child's testimony and/or to generalize his or her testimony instead of incorporating the testimony of a child in domestic disputes between their parents.

This case is rather typical, two caring parents who love their children and have good qualities, but are not without deficiencies, are competing for more time with their children and greater authority over and responsibility for their welfare. The trial court made findings that both parents loved and cared for their children but made commensurate adverse findings. Specifically, the trial court chastised Father for living in Murfreesboro while working in Nashville, finding it created "unnecessary" and "foolish" transportation issues. The record reveals that Father has had difficulty maintaining employment. He was unemployed from October 1995 until January 2001; yet, he stayed home as a house husband which benefitted the family. He obtained employment in 2001 but was unable to hold a steady job. He held four different jobs in 2001. To his credit, he continued to obtain new employment thereby supporting himself and in part the children. Due to the difficulty in maintaining stable employment, the trial court's criticism of Father for living in Murfreesboro and working in Nashville appears to be overemphasized. Mother does not have an exemplary employment record either. She appeared to have a good career as a nurse until she was terminated from her employment at Vanderbilt in March 2000, ostensibly due to her drug abuse. Nevertheless, the parties' work history does not appear to be pivotal to the issues on appeal though they have adversely impacted the stability of the children's home life.

As Father justifiably asserts, Mother's drug addiction is an important issue. The evidence suggests she began abusing prescription drugs in 1997. Her abuse was so serious she was found unconscious on two occasions. While Mother is adamant that her abuse of prescription drugs ended in April 2000, the trial court noted that she "*may* have tried to pass off a forged prescription as late as December 2001." However, there is no direct evidence that Mother was abusing drugs during the year prior to the trial. The evidence suggests that Mother has successfully abstained for more than a year. The trial court's initial concerns about Mother's previous drug abuse were obviously mitigated by Mother's rehabilitation. The record supports this finding for it reveals that Mother made diligent efforts at rehabilitation and appears to be committed to her recovery for she attended a rehabilitation program at Cumberland Heights and since August 2000 has participated in a Peer Assistance Program, attends Narcotics Anonymous (NA) regularly, and has a drug screening once a month.[6] Moreover, there is no evidence that she failed a drug screen due to abuse of drugs during this period.

While Father also has many positive attributes and is deserving of serious consideration as the primary residential parent, the trial court identified some issues that negate his positive attributes. Specifically, the trial court found that he had a less than perfect relationship with Christie, the youngest child. When asked how he gets along with Christie he said she was "attentive and very respectful" and "has been a very good role model for Nicki and a great help to Nicki." The trial judge noted that he "did not espouse the normal things about their relationship such as love, affection, a real bond, etc." This finding is a perception which we cannot objectively analyze for it

---

[6]The Peer Assistance Program is sponsored and operated by members of the nursing profession to help nurses recover from alcohol and/or drug abuse. The program requires participants to consent to random drug tests.

is based, at least in part, on the demeanor of the witnesses. The trial court is in a better position to gauge the demeanor and credibility of witnesses than this court. *Adelsperger*, 970 S.W.2d at 485.

The above finding is a statutory factor and a most relevant factor to this case for Nicole has special needs. She has Down's Syndrome, tetralogy of fallot (a lung and heart malady), and cannot converse. Her speech is limited to phrases such as "hurt, sick, yucky."[7] This child's emotional needs and developmental level are significant factors in determining which of these parents should be the primary residential parent with authority to make decisions regarding non-emergency health care. Tenn. Code Ann. § 36-6-404(b)(8). Mother is a nurse. Father has no medical training. While it is not a negative that a parent is not medically trained, in this case it is a significant factor favoring Mother that she is a nurse when comparing these parents due to Nicole's special needs. This factor, coupled with the fact that the youngest child wishes to remain with her "buddy," her older sister, and wishes to live with her mother "most of the time" constitutes a substantial shift in the comparison between the parents in favor of Mother.

Father complains that the trial court erroneously based its decision, in part, on Father's decision to live in Murfreesboro, which the trial court found "makes for unnecessary transportation issues." The trial court made that finding and also found that the only other possible reason for keeping anyone in Murfreesboro is the alleged good program for Nicole. However, the trial court also found that there was no showing that the program offered by the school in Nashville would be inferior to that in Murfreesboro. Indeed, Murfreesboro, like Nashville, is a wonderful place to work, live and raise a family; however, this case is not a contest between Murfreesboro and Nashville. The trial court's decision to designate Mother the primary residential parent was based on a comparison between Mother and Father, not a comparison between Murfreesboro and Nashville. Having made the determination that Mother was best suited to the be primary residential parent, the finding pertaining to "unnecessary transportation" was relevant under the statutory umbrella of "any other factors deemed relevant by the court" when designing the residential schedule Tenn. Code Ann. § 36-6-404(b)(16). Accordingly, we find Fathers' complaint as to this factor misplaced.

It is apparent from its findings that the trial court considered the appropriate statutory factors. Moreover, the evidence does not preponderate against the trial court's findings. Further, the trial court's findings justify the trial court's designation of Mother as the primary residential parent and in setting the residential schedule.

---

[7]Mother testified that "Nicki does not talk, so we really do not know what she is thinking or saying. We sometimes - I sometimes read a lot into her expressions, whether she is hurting." Nicki, who is the older child, has other substantial personal needs, but it is not necessary to fully develop them in this opinion.

Accordingly, we affirm the decision of the trial court designating Mother as primary residential parent and in designing the residential schedule. Costs of appeal are assessed against the appellant, Edwin Earl Sanborn.

_____

FRANK G. CLEMENT, JR., JUDGE