# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 28, 2012 Session

## MERLINA ELIJAH (WILLIAMS) DRAPER v. RYAN ASHLEY WILLIAMS

**Direct Appeal from the Circuit Court for Sumner County**
**No. 2004-CV-25665C      C. L. Rogers, Judge**

_____

**No. M2011-00875-COA-R3-CV - Filed October 2, 2012**

_____

This case involves the modification of a parenting plan.  The trial court modified the parenting plan upon its finding that a material change in circumstances had occurred such that primary residential custody with Mother was no longer in the child's best interest.  On appeal, Mother argues that the trial court erred in granting primary residential custody to Father, and Father argues that the trial court erred in denying his request for attorney's fees. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., and J. STEVEN STAFFORD, J., joined.

James G. King, Nashville, Tennessee, for the appellant, Merlina Elijah (Williams) Draper.

Joseph Y. Longmire, Jr., Nashville, Tennessee, for the appellee, Ryan Ashley Williams.

## MEMORANDUM OPINION[1]

_____

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

On December 9, 2004, Merlina (Williams) Draper ("Mother") and Ryan Williams ("Father") were divorced pursuant to a Final Decree of Divorce. Mother was named the primary residential parent of the parties' minor child.

On December 28, 2010, Father filed a petition to modify the parenting plan alleging that a material change of circumstances occurred such that he should be named the primary residential parent. Father's petition alleged that Mother failed to provide a stable home environment because she moved nine times since the entry of the Final Decree, which caused their minor child to change schools several times. Father further alleged that since the divorce, Mother had lived with one man who was a registered sex offender, and currently lives with her boyfriend who physically assaulted the minor child.[2] Additionally, Father alleged that Mother was frequently involved in altercations with her oldest daughter,[3] which was disruptive to the minor child.

On March 1, 2011, the trial court conducted a hearing on Father's petition to modify the parenting plan. The trial court considered, *inter alia*, the instability of the child's current environment, the performance of each parent in providing for the child, the stability of the family units of each parent, evidence of child abuse, and the character and behavior of other persons in the child's home and their interactions with the child. The trial court also heard the testimony of the child's counselor, who testified that the child experienced withdrawal, witnessed domestic disturbances between Mother and her live-in boyfriend, and was subjected to punishment for telling Father about her circumstances living in Mother's home. At the conclusion of the hearing, the trial court found that the child was withdrawn, scared, fearful of her Mother and her live-in boyfriend, emotional over comments by the live-in boyfriend to harm the Father, and unsettled with the constant moves and school changes. The trial court further found that the Father was stable, married, had stable employment and an appropriate home, and that the child had a close relationship with Father's stepsons.[4] Thus, on March 3, 2011, the trial court entered an order modifying the parenting plan, naming Father the primary residential parent. Mother timely filed a notice of appeal to this Court.

---

[2]The alleged assault involved an incident where Mother's live-in boyfriend gave the child a "wedgie." At trial, Mother testified that she was not aware that this occurred until the Department of Children's Services arrived at her home to discuss the incident.

[3]Father is not the biological father of Mother's oldest daughter.

[4]Father's stepsons include a nine year old and five year old twins.

### *Issues Presented*

On appeal, Mother argues that the trial court erred in finding that a material change in circumstances had occurred such that primary residential custody with Mother was no longer in the child's best interest. In addition, Father argues that the trial court erred in denying his request for attorney's fees, and further requests attorney's fees incurred on appeal.

### *Standard of Review*

We review the trial court's findings of fact with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). Accordingly, we will not reverse the trial court's factual findings unless they are contrary to the preponderance of the evidence. We review the trial court's conclusions on matters of law *de novo*, however, with no presumption of correctness. Tenn. R. App. P. 13(d). Our review of a trial court's application of the law to the facts is *de novo*, with no presumption of correctness. *State v. Ingram*, 331 S.W.3d 746, 755 (Tenn. 2011).

### *Discussion*

Trial courts have wide discretion to establish a parenting arrangement that is in the best interests of the child. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted). The trial court's judgment often turns on subtle factors which require the court to assess the credibility and demeanor of the witnesses. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997). We will not substitute our judgment for that of the trial court on these matters. *Eldridge*, 42 S.W.3d at 88. Rather, we will disturb a trial court's decision regarding parental responsibility only if it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.*

A decree pertaining to a residential parenting schedule order may be modified where the petitioner demonstrates, by a preponderance of the evidence, that a material change of circumstances has occurred such that modification is in the best interest of the child. Tenn. Code Ann. § 36-6-101(a)(2)(C) (2010).[5] Thus, the trial court must utilize a two-part test in

---

[5]Tennessee Code Annotated section 36-6-101(a)(2)(C) provides:

If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the

(continued...)

determining whether a change of custody or visitation is warranted. First, the trial court must determine whether a material change of circumstances has occurred that affects the well being of the child. Second, if a material change in circumstances has occurred, the trial court must utilize the factors in section 36-6-106 to determine whether the modification of custody is in the child's best interest. *Id.*

In its final order modifying the parenting plan, the trial court stated as follows:

> A material change of circumstances has occurred since the 2004 Permanent Parenting Plan order. The Mother will not properly communicate with Father regarding the child's interest and welfare. After a comparative analysis of the evidence and factors regarding modification of custody, it is in the childs [sic] best interest and welfare for the Father to be Primary Residential Parent.

> The Court has considered, continuity, primary care giver, school records, performance of each parent in providing for the child, the child's current environment stability, the childs [sic] current environment, the stability of the family units of each parent, evidence of abuse to the child, and the character and behavior of other persons in the childs [sic] home and their interaction with the child. The child is in an unsafe and unstable environment. Mother has no stable family unit. The child has reported wrongful touching by the Mothers [sic] live in boyfriend. The character and behavior of the live in boyfriend is not in the childs [sic] best interest.

> The child has been moved 9 times and enrolled in 5 different schools over the last 5 years without good cause. It is Mothers [sic] involvement with her live in boyfriend driving the constant moves and school changes. The child reported sexual touching by the live in boyfriend to her Mother. Mother failed to protect the child, instructing the child nothing could be done since the live in boyfriend paid the bills. Mother resisted and was totally uncooperative

---

[5](...continued)
evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

in Fathers [sic] efforts to obtain a child counselor at his expense for the daughter. The Court finds the child was in need of such counseling. The counseling disclosed withdrawal, witnessing domestic disturbances between Mother and her live in boyfriend, police presence in the home, and being constantly punished by the Mother for telling her Father about her home circumstances. The child counselor obtained by Father is found to be very professional and credible. The child is withdrawn, scared, fearful of her Mother and her live in boyfriend, emotional over comments by the live in boyfriend to harm her Father, and unsettled with the constant moves and school changes.

Father is found to be stable, married, [has] stable employment, and an adequate and appropriate home. Father has remarried and step mother is found to be supportive and attentive. The three step brothers age 5, 5, and 9 have a close relationship with the child and use appropriate demeanor and manners.

Mother has no credibility with the Court. Her claims of recent found changed beliefs and the boyfriend having moved out the weekend before the trial are not credible and more importantly come very late for the Court to believe Mothers [sic] statement of her intent to change.

A comparative analysis establishes the child lives in an unstable, unsafe environment, lacks stability in the current placement, and is subjected to a third person with questionable behavior and character. Mothers [sic] reliance on continuity and primary care giver do not support the child's continued placement with Mother as Primary Residential Parent in light of the foregoing.

We must first address whether a material change of circumstances occurred since the entry of the Final Decree that affected the child's well being. It is undisputed that Mother moved the child nine (9) times since the entry of the Final Decree, which resulted in the child having to enroll in five (5) different schools. These decisions by Mother caused great instability in the child's life. It is also undisputed that Mother continued to live with her boyfriend, even after she learned of his inappropriate behavior toward the child. The environment in Mother's home was such that the child witnessed domestic disturbances, frequent altercations involving Mother's oldest daughter, and was punished if she informed Father of these circumstances. Moreover, as testified by the child's counselor, the child was withdrawn, scared, and fearful of Mother and her live-in boyfriend. Accordingly, we cannot say that the evidence preponderates against the trial court's finding that a material change of circumstances occurred that affected the well being of the child.

Next, we must address whether modification of the parenting plan was in the child's best interest in light of the comparative fitness of Mother and Father. In making its decision, the court must consider the following factors:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;

(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .

(4) The stability of the family unit of the parents or caregivers;

(5) The mental and physical health of the parents or caregivers;

(6) The home, school and community record of the child;

(7)(A) The reasonable preference of the child, if twelve (12) years of age or older;

(B) The court may hear the preference of a younger child on request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; provided, that, where there are allegations that one (1) parent has committed child abuse, as defined in [section] 39-15-401 or [section] 39-15-402, or child sexual abuse, as defined in [section] 37-1-602, against a family member, the court shall consider all evidence relevant to the physical and emotional safety of the child, and determine, by a clear preponderance of the evidence, whether such abuse has occurred. The court shall include in its decision a written finding of all evidence, and all findings of facts connected to the evidence. In addition, the court shall, where appropriate, refer any issues of abuse to the juvenile court for further proceedings;

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a)(1)-(10).

Like the determination of whether a material change in circumstance has occurred, the determination of where the best interest of the child lies is largely a factual matter. *Adams v. Adams*, No. W2008-00225-COA-R3-CV, 2009 WL 690697, at *12 (Tenn. Ct. App. Mar. 17, 2009). Moreover, as in most custody actions, the factual matters to be determined by the trial court when considering the factors set forth in Tennessee Code Annotated section 36-6-106 require an assessment of the credibility of the parties and the witnesses. "Because the trial judge is in the best position to assess the credibility of the witnesses, such credibility determinations are entitled to great weight on appeal." *Burden v. Burden*, 250 S.W.3d 899, 905 (Tenn. Ct. App. 2007) (citing *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)).

Although Mother was the primary care giver for the child since the entry of the Final Decree, the environment in Mother's home with her live-in boyfriend and oldest daughter was unstable and unsafe. On the other hand, Father has a safe and stable home in which his wife and stepchildren maintain a strong relationship with the child. Despite Mother's claimed intent to change and statements that her boyfriend moved out shortly before trial, the trial court concluded that Mother was not credible. Moreover, the testimony of the child's counselor, who the trial court found to be very credible, illustrates the effects that Mother's decisions and unstable home environment had on the child. Accordingly, giving due deference to the trial court's credibility determinations, we conclude that the evidence in the record does not preponderate against the trial court's finding that modification of the parenting plan was in the best interest of the child.

Finally, we must address Father's claim that the trial court erred in denying his request for attorney's fees at trial. Father also requests an award of attorney's fees incurred on appeal. Father seeks attorney fees pursuant to Tennessee Code Annotated section 36-5-103(c), which provides:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c). This statutory provision also applies to awards of attorney fees incurred on appeal. *See Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App.

2004)("Tenn. Code Ann. § 36-5-103(c) (Supp.2004) vests in this court the discretionary authority to award these fees and costs in proper cases.").

In the proceedings below, the trial court ordered that each party was responsible for their respective attorney's fees. An award of attorney's fees in child custody actions is within the discretion of the trial court. *Kesterson v. Varner*, 172 S.W.3d 556, 573 (Tenn. Ct. App. 2005). We emphasize that the abuse of discretion standard does not permit this Court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Rather, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). After reviewing the record, we find no error in the trial court's discretionary decision to deny Father's request for attorney's fees. Further, exercising our discretion, we decline to award attorney's fees incurred on appeal.

### *Conclusion*

For the foregoing reasons, we affirm the judgment of the trial court. Costs of this appeal are taxed to the Appellant, Merlina (Williams) Draper, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE